UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

KELSEY OUELETTE,                    :
                                    :CIVIL ACTION NO. 3:14-CV-712
            Plaintiff,              :
                                    :(JUDGE CONABOY)
            v.                      :
                                    :
SALLY HANSEN DIV. DIST.,            :
DELL LABORATORIES, INC.,            :
and COTY US, LLC,                   :
                                    :
            Defendants.             :
                                    :
_____

**MEMORANDUM**

Here we consider the four motions in limine filed by
Defendants on July 1, 2015: 1) Defendants' Motion in Limine to
Preclude Evidence and/or Limit Evidence of Medical Expense and Wage
Loss (Doc. 27); 2) Defendants' Motion in Limine to Preclude
Evidence of Other Lawsuits or Claims Involving Defendants' Heatable
Wax Products (Doc. 29); 3) Defendants' Motion in Limine to Preclude
Plaintiff's Reliance On and/or Jury Instructions Pertaining to the
Malfunction Theory (Doc. 31); and 4) Defendants' Motion in Limine
to Preclude Plaintiff from Alleging Any Psychological Harm (Doc.
33).  The first three motions are fully briefed and ripe for
disposition.  Defendants did not file a reply brief to Defendants'
Motion in Limine to Preclude Plaintiff from Alleging Any
Psychological Harm (Doc. 33), but the time for doing so has passed
and this motion is also ripe for disposition.

**I. Background**

As set out in the Court's May 12, 2015, Memorandum (Doc. 24)

addressing Defendants' Motion to Preclude the Report and Testimony of J. Pablo Ross Pursuant to the Daubert Standard (Doc. 13),

Plaintiff alleges injury as a result of an incident related to her use of Defendants' Lavender Spa Body Wax on January 22, 2012. (Doc. 1-2.) Plaintiff had used the product previously without incident. (*Id.*) Before she used the product on January 22nd, she avers that the product appeared as it had on previous occasions of use. (Doc. 1-2 ¶ 15.) The instructions stated that the product was to be initially heated for thirty seconds at medium heat until it was melted to a spreadable consistency and if the wax was not melted, it was to be heated for another ten seconds. (Doc. 13-4 at 3.) Plaintiff maintains that she followed the product's instructions, heating it in the microwave for thirty seconds and then an additional ten seconds (two five second intervals (Doc. 13-4 at 4) when she discovered that the product was not soft enough to spread. (Doc. 1-2 ¶¶ 18-19.) Plaintiff does not know the setting of the microwave on the day of the incident. (*Id.*)

When Plaintiff removed the product from the microwave, she placed it on the kitchen counter. (Doc. 1-2 ¶ 20.) She testified that it was not steaming, boiling or bubbling at the time, and it did not feel hot to her. (Doc. 13-4 at 4.) Leaving the jar on the counter, Plaintiff testified that she put the lid on, walked about eight feet to the garbage can and walked back to where the container was sitting on the counter. (*Id.*) She said that the jar began to sizzle five or six seconds later--it was in her hand at the time. (Doc. 13-4 at 5.) Plaintiff further stated that the jar exploded about three seconds later, adding that she threw the jar after it burned her and was disintegrating in her hands. (*Id.*) Wax ultimately landed on Plaintiff's right arm, right hand, and left hand as well as on the countertop, floor, trashcan and curtains. (Doc. 1-2 ¶ 22.)

> Plaintiff was rushed to Community Medical
> Center in Scranton and thereafter life-
> flighted to Lehigh Valley Hospital's burn
> unit in Allentown where she was treated for
> third-degree burns. (Doc. 1-2 ¶¶ 24-25.)

(Doc. 24 at 1-2.) The Court denied Defendants' motion by Order of May 12, 2015. (Doc. 25.)

By Order of June 8, 2015, the Court denied Defendants' Motion for Summary Judgment (Doc. 16). (Doc. 26.)

## II. Discussion

### a) Evidence of Psychological Harm

With Defendants' Motion in Limine to Preclude Plaintiff from Alleging Any Psychological Harm (Doc. 33), they assert that on June 9, 2015, Plaintiff's counsel informed Defendants' counsel that Plaintiff was being treated by Dr. Montgomery of Advanced Community Services Associates but Plaintiff had not provided relevant records and did not comply with the Federal Rules of Civil Procedure regarding Plaintiff's additional treatment and related matters. (Doc. 34 at 3-9.) Plaintiff asserts the mental health treatment which began in April 2015 is for "PTSD related to the burns and explosion" and the delay in treatment was caused by delay in diagnosis and treatment by Plaintiff's treating family doctor. (Doc. 45 at 1, 3.) Plaintiff's Brief in Opposition Defendant's Motion in Limine to Preclude Psychological Harm indicates that the parties have had further communication on this issue. (Doc. 45 at 2.) Defendants did not file a reply brief. Without clarification

3

of the current status of the issues raised with this motion, the Court cannot decide the appropriate resolution. Therefore, the motion is denied at this time without prejudice to Defendants' raising issues which remain unresolved if warranted. Any such filing will be deemed timely due to Plaintiff's delay in providing Defendants with mental health records.

### b) *Evidence of Medical Expense and Wage Loss*

With Defendants' Motion in Limine to Preclude Evidence and/or Limit Evidence of Medical Expense and Wage Loss (Doc. 27), Defendants argue the following: Plaintiff should not be able to present evidence of past or future wage loss because Plaintiff has not produced sufficient data from which wage loss damages can be assessed with reasonable certainty (Doc. 28 ar 4); and evidence of medical expenses outside the Blue Cross/Blue Shield lien should be precluded because Plaintiff has only presented evidence as to this lien and there is no evidence to support a claim of future medical expenses (*id.* at 6-7). Plaintiff argues that in addition to the lien, she has incurred out of pocket expenses, paid and unpaid deductibles and copays, and costs of present and future treatment for recently diagnosed PTSD. (Doc. 41 at 2.) Plaintiff also avers she should be reimbursed for her last tuition for cosmetology school because she cannot get her license, and she will claim loss of her job "and therefore, loss of wages at the instigation of the Defendant." (*Id.*) We conclude Defendants' motion is properly

4

granted in part and denied in part.

**1) Tuition and Wage Loss**

Plaintiff's argument that she should be reimbursed for her last tuition for cosmetology school "because she cannot get her license" (Doc. 41 at 2) is rejected based on the lack of evidence in the record to support such a claim. As Defendant points out, Plaintiff completed the cosmetology program in February 2013, which is after the incident at issue here. (Doc. 28 at 2; Doc. 48 at 2.) In her opposition brief, Plaintiff points to no evidence linking her injury to her failure to get her license. (*See* Doc. 41.) Thus, Plaintiff does not provide a basis for her assertion that she is entitled to tuition reimbursement because she cannot get her cosmetology license.[1]

Similarly, Plaintiff does not explain the origin of her claim that "Coty caused [her] to lose her steady employment" in the one page "Argument" section of her opposition brief. (*See* Doc. 41 at 2.) In "Plaintiff's Answer to Defendant's Motion in Limine Re: Medical Expenses amd Wage Loss" (Doc. 40), which is a filing not recognized under rules governing the filing of pretrial motions, Plaintiff states that, as averred in her Affidavit dated July 16, 2015, "her income was lost post-accident because Defendant

---

[1]  Insofar as Plaintiff may attempt to assert a loss of future earning power based on failure to obtain her cosmetology license, such a claim would also be precluded for lack of sufficient support.

precluded her then employer, ERG Staffing Services, from allowing her to work at her job as production "packer", and "labeler" because Coty products were being packaged and labelled [sic]. This loss, therefore, is a jury question." (Doc. 40 at 1.)

According to Plaintiff's August 1, 2015, Affidavit, she was laid off from her job on November 7, 2014. (Doc. 41-2 at 1.) Plaintiff stated she was told she would cover for her partner from November 5th to November 7th and "was put on the line." (*Id.*) She added: "My supervisor and assistant supervisor, Lilly and Alex, told me if I wanted to keep my job I would have to work on the line. I told them I was limited as to what I could do and they gave me positions that were easy and disn't [sic] cause me pain." (*Id.*) Plaintiff was unable to determine the reason for her layoff. (*Id.*) Plaintiff stated that she has looked for work since her layoff but has not had a positive response to her applications. (*Id.* at 2.) Plaintiff also averred that she was "about to give up and start working for a temp agency, when I was injured and have not been able to work since then. I am eager to get back to work as soon as I am healed." (*Id.*)

Because Plaintiff's averment that Coty did not allow ERG Staffing Services to employ her (which was made in a document not recognized as a proper responsive filing to a pretrial motion) is not supported by Plaintiff's Affidavit or opposition brief, this basis for Plaintiff's wage loss claim will not be further

considered and will not be allowed at trial. Plaintiff points to no other basis to support a claim for past wage loss.

Plaintiff's future wage loss claim is precluded because more is required than a mere conclusory averment. As Defendant argues, conjecture is not enough--there must be sufficient data from which damages can be assessed and loss of earning power must be supported by "proper and satisfactory proof." (Doc. 28 at 3 (citing *Kearns v. Clark*, 493 A.2d 1358, 1364 (Pa. Super. Ct. 1985)).) Here Plaintiff has not provided such support and, therefore, may not make a claim for future wage loss at trial.[2]

Because Plaintiff has not provided a basis for her claim that she is entitled to compensation for either past or future wage loss, she is precluded from presenting any evidence of wage loss at trial.

## 2.   **Unreimbursed Medical Expenses**

Defendant claims Plaintiff should not be allowed to include out of pocket medical expenses as well as paid and unpaid deductibles and co-pays as incurred damages. (Doc. 41 at 2.) Plaintiff asserts she is entitled to include these items as she "must be made whole." (Doc. 41 at 2.)

Defendant asserts that a plaintiff is entitled to recover for

---

[2]   The form and content of evidence now presented regarding psychological harm as well as Plaintiff's lack of sufficient development of argument on related issues (*see* Docs. 44, 45) do not show that Plaintiff can support a claim for wage loss based on psychological harm.

the reasonable value of medical services which means the amount paid and accepted as payment in full for the medical services rendered. (Doc. 28 at 4-5 (citing *Moorehead v. Crozer*, 765 A.2d 786, 789 (Pa. 2001) (abrogated on other grounds)).)

Here the amount paid by Plaintiff for medical services related to the injuries sustained as a result of the incident at issue may be shown to be in excess of the amount of the Blue Cross/Blue Shield lien in the amount of $20,561.83. Therefore, to the extent Plaintiff provides proof of such paid expenses, compensatory damages may include out of pocket expenses, paid deductibles, and co-pays.

Plaintiff presents no proof of future medical expenses related to treatment of physical injuries sustained as a result of the incident. The only expert report provided during the discovery period was by Dr. Francis Collini who opined that no future treatment was necessary. (Doc. 47 at 2-3.) Therefore, Plaintiff is precluded from raising any claim for expenses related to future treatment of physical injuries sustained in the incident.

If Plaintiff presents competent evidence of medical expenses related to psychological harm, such evidence would be admissible at trial unless precluded by pretrial order or trial ruling.

### c) *Other Lawsuits or Claims*

With Defendants' Motion in Limine to Preclude Evidence of Other Lawsuits or Claims Involving Defendants' Heatable Wax

Products (Doc. 29), Defendants argue Plaintiff has produced no evidence of similar situations (same or similar product exploding in manner claimed by Plaintiff) though she has "represented at times that [she] is aware of other claims or lawsuits involving Defendants' heatable wax products." (Doc. 30 at 2-3.) Plaintiff asserts she is entitled to present evidence to the jury of similar, prior occurrences concerning the same product or products. (Doc. 42 at 1.) Plaintiff now produces information regarding allegedly similar occurrences submitted to the Court as Exhibits attached to Plaintiff's Answer to Defendant's Motion in Limine to Preclude Other Lawsuits or Claims Involving Heatable Wax Products. (Docs. 42 through 42-5.) We conclude Defendants' motion is properly granted.

Exhibit A appears to be an internet article dated May 1, 2013, concerning Shannon Frank's use of Sally Hansen "extra strength all over body wax" which she alleged she took out of the microwave when she noticed the container began to bubble midway through the heating process and she was burned when the wax spewed out of the side of the container after she removed it from the microwave. (Doc. 42-1 at 1.) The article also states that Ms. Frank sought answers from Sally Hansen "about how this could happen" and Sally Hansen responded that the product was safe for use as intended, had never been recalled, and detailed instructions accompany the product and should be followed. (*Id.*)

Exhibit B is an undated, unsigned, unstamped complaint with Marissa Hanley identified as the plaintiff and Coty Inc. identified as one of the defendants. (Doc. 42-2.) The complaint alleges that on or about October 6, 2014, Ms. Hanley heated wax from the Sally Hansen Extra Strength Brazilian Bikini Wax and Shaping Kit in the microwave according to instructions and, as she was stirring the product, a "geyser of boiling wax shot up from beneath the top layer of hardened wax" causing second degree burns to her hands and abdomen. (*Id.* at 2-3.) The Exhibit also contains a November 4, 2014, letter to Sally Hansen regarding the incident from the law firm of Niedweske Barber Hager, LLC, with a demand for $250,000. (Doc. 42-2 at 8.) Several cases are cited in support of Ms. Hanley's demand, none of which reference exploding wax as a cause of the injury sustained or identify Sally Hansen or Coty as a defendant. (*Id.*) A series of e-mails concerning Ms. Hanley's case are included in Exhibit B. (Doc. 42-2 at 9-22.)

Exhibit C is another internet article about a lawsuit filed by Carmen Canas in Brooklyn District Court in New York "against Sally Hansen and its manufacturer" for third-degree burns allegedly sustained after using "hot wax made by Sally Hansen." (Doc. 42-3 at 1.) The article states that a spokesperson for the Sally Hansen parent company said the company had not yet been served with the complaint and had not had an opportunity to review it. (*Id.*)

Exhibit D is a hand-written document titled "Lawsuits against

Coty" apparently prepared by Kelsey Ouelette. (Doc. 42-4.) It catalogs several cases involving a variety of products and does not provide citations or the sources of the information. (*Id.* at 1-3.) The document also includes a review of Sally Hansen hair remover wax and wax strips by a customer who experienced skin peeling and burning after using the products. (*Id.* at 3-4.)

Exhibit E appears to be Defendants' responses to certain interrogatories posed by Plaintiff. (Doc. 42-5 at 1-2.) The document is undated, unsigned, and does not indicate what interrogatories Plaintiff posed to Defendants. (*Id.*) In one response, Defendants identify four allegations made concerning Lavender Spa Body Wax, none of which identify circumstances similar to the incident at issue here. (Doc. 42-5 at 1 ¶ 13.)

As noted above, in their supporting brief Defendants assert that Plaintiff "represented at times" that she was aware of other lawsuits or claims involving Defendants' heatable wax products but she had not produced evidence of any similar situation to that at issue here and there is no mention of any comparable incident in Plaintiff's expert report. (Doc. 30 at 2.) Similarly, Defendants note that Plaintiff has made reference to an internet article allegedly indicating that one of its products burned an individual but the article had not been produced by Plaintiff's Disclosures or discovery responses. (*Id.* at 3.) Defendants further assert that they provided examples of claims involving the Lavender Spa Body

Wax in their answers to interrogatories but the allegations in those claims involved skin infection, discoloration and/or chemical reaction following use of the product and the claims had not been proven. (*Id.* at 2.) Defendants argue that evidence of other lawsuits or claims should be precluded pursuant to Federal Rules of Evidence 401, 402, 403, 404(a), 901, 902, and the hearsay rule. (*Id.* at 3-5.) In their reply brief, Defendants argue that the specific documents now produced should be precluded based on the rules previously cited. (Doc. 47 at 2-3.)

Federal Rule of Evidence 401 provides that evidence is relevant if "(a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Pursuant to Rule 402, any irrelevant evidence is not admissible. Under Rule 403, relevant evidence may be excluded if the court determines "its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Rule 404(a) provides that "evidence of a person's character or character trait is not admissible to prove that on a particular occasion the person acted in accordance with the character or trait." Federal Rule of Evidence 901, Authenticating or Identifying Evidence, provides that generally "[t]o satisfy the requirement of authenticating or identifying an item of evidence,

the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." Fed. R. Evid. 901(a). Rule 901(b) sets out examples of how a document may be authenticated or identified. Rule 902, Evidence That Is Self-Authenticating, sets out items which require no extrinsic evidence of authenticity in order to be admitted.

Federal Rules of Evidence 801 through 806 address hearsay. Rule 801, Definitions That Apply to This Article; Exclusions From Hearsay, provides that "[s]tatement means a person's oral assertion, written assertion, or nonverbal conduct, if the person intended it as an assertion"; "Declarant means the person who made the statement"; and "hearsay" means a statement the declarant does not make while testifying at the current trial or hearing and is offered into evidence for the truth of the matter asserted. Fed. R. Evid. 801(a)-(c). Rule 801(d) sets out statements that are not hearsay--in certain circumstances a declarant-witness's prior statement or an opposing party's statement. Rule 802 states that hearsay is not admissible unless allowed by the rules of evidence or other specified rules. Rules 803 and 804 provide for numerous exceptions to the hearsay rule.

In assessing whether evidence proffered as direct evidence of a defect is relevant in a products liability case, the Third Circuit Court of Appeals has established that, "in products-liability cases, evidence of prior accidents is not relevant, and

therefore inadmissible, unless the accidents occurred under 'substantially similar' circumstances." *Jackson v. Louisville Ladder, Inc.*, 586 F. App'x 882, 884 (3d Cir. 2014) (not precedential)(citing *Barker v. Deere & Co.*, 60 F.3d 158, 162 (3d Cir. 1995) (plaintiff did not introduce evidence that other accidents occurred on same ladder model or under similar circumstances therefore evidence was not relevant under Rule 401)). It is up to the proponent to demonstrate substantial similarity. *Barker*, 60 F.3d at 162.

> [T]he district court must be apprised of the specific facts of previous accidents in order to make a reasoned determination as to whether the prior accidents are "substantially similar." Absent such information, it is impossible for the district court in the first instance . . . to review the facts in order to make a determination as to similarity." *See Hardy v. Chemetron Corp.*, 870 F.2d 1007, 1009 (5th Cir. 1989) (upholding the trial court's refusal to admit evidence because there was a "total lack of evidence on the crucial question of substantial similarity"); *Nachsheim* [*v. Beech Aircraft Corp.*], 847 F.2d [1261,] 1269 [7th Cir. 1988]) ("[T]here are too few established facts about the prior accident from which a comparison of the two accidents can be made.") (emphasis in original); *Lewy v. Remington Arms Co.*, 836 F.2d 1104, 1109 (8th Cir. 1988) (plaintiff's counsel "failed to lay adequate foundation" to show that other evidence was similar)[.]

*Barker*, 60 F.3d at 163.

As noted above, an answer is not a recognized responsive filing to a pretrial motion. However, we review the documents

submitted as if properly filed.[3]

We conclude Plaintiff has not carried her burden of demonstrating substantial similarity and she has not requested an opportunity to do so--Plaintiff merely refers to the Exhibits now produced and conclusorily asserts in her two-page opposition brief that determinations of similarity and relevance should be left to the jury. (Doc. 43 at 1-2.) Significantly, other incidents noted in Plaintiff's Exhibits do not involve the product at issue here. No evidence has been presented that the products identified in the Exhibits are substantially similar in composition to the Lavender Spa Body Wax used by Plaintiff, were manufactured in the same or a similar manner, or contained the same or similar warnings. Thus, under *Barker*, Plaintiff has not established that other incidents are relevant to show a design, manufacturing or warning defect and Defendants' motion is properly granted to the extent Defendants seek to exclude the information for these purposes.

Whether evidence of other accidents/incidents is admissible for impeachment purposes is a different determination. Plaintiff alleges that Rule 403 "does not bar this impeachable evidence since it does not outweigh relevance by substantial prejudice. Clearly,

_____

[3] Defendants note that the Exhibits now submitted were not produced during discovery. (Doc. 30 at 3.) Because Defendants do not present argument related to the post-discovery presentation of evidence, we will not discuss Plaintiff's current production in terms of whether discovery rules have been violated. *See* Fed. R. Civ. P. 26(a)(1)(ii) and 26(e).

15

when the Defendant doesn't honestly disclose information, it cannot then be concerned with unfair prejudice, and certainly Defendants [sic] deception does not give it the right to argue any substantial prejudice." (Doc. 43 at 2.) Plaintiff does not state how the Exhibits now presented would be used for impeachment purposes. She provides no evidence that information contained in the Exhibits is accurate nor does she identify a methodology for doing so. Plaintiff does not detail her claim of deception and does not explain how Defendants did not "honestly disclose information," nor is the basis for her assertions apparent from Plaintiff's submissions.[4] In sum, Plaintiff's cryptic conclusory statements are woefully inadequate to support her broad assertion that the information about allegedly similar incidents is properly presented for impeachment purposes.

Furthermore, if we were to assume *arguendo* that information now presented was relevant for the limited purpose of impeachment, based on the record before us we would find the evidence improper under Rule 403.[5] We agree with the conclusion in *Jackson v.*

---

[4]    For example, although Exhibit E sets out responses to interrogatories, one of which refers to "allegations" concerning "Lavender Spa Body Wax" (Doc. 42-5 at 1-2), we do not know what interrogatory was posed and, therefore, we cannot surmise that a response was incomplete or inaccurate.

[5]    Plaintiff cites Federal Rule of Evidence 607 for the proposition that the rule "permits this evidence to impeach Coty's credibility as a matter of law." (Doc. 43 at 2.) Rule 607 provides that "[t]he credibility of a witness may be attacked by any party, including the party calling the witness." Plaintiff

*Lousiville Ladder, Inc.*, No. 1:11-CV-1527, 2014 WL 460849, at *5
(M.D. Pa. Feb. 5, 2014), that where evidence of other accidents is
not substantially similar to the accident at issue "exposing the
jury to the irrelevant evidence runs a heavy risk of confusion and
prejudice . . . . Thus, even if the evidence were relevant for
impeachment purposes, the Court finds it would still be
impermissible under Rule 403."

Because we have concluded the information contained in
Plaintiff's Exhibits is not admissible under Rules 401 and 403, we
do not address Defendants' remaining arguments.[6] Defendants'
Motion in Limine to Preclude Evidence of Other Lawsuits or Claims
Involving Defendants' Heatable Wax Products (Doc. 29) is granted.
The motion is granted without prejudice to Plaintiff seeking
reconsideration with respect to evidence of another lawsuit or

---

does not elaborate on how this rule supports her sweeping
proposition and we will not be give her assertion further
consideration here.

[6] Regarding Defendants' argument that "evidence of other
lawsuits or claims violates the hearsay rule as such evidence would
be offered to prove the truth of the matter asserted and meet no
exception to the hearsay rule" (Doc. 30 at 5), we note that if
evidence of other incidents were to be found relevant, hearsay
rules would not apply if the evidence were to be presented, not for
the truth of the matter asserted, but for the purpose of showing
Defendants had notice of the danger presented by the product. *See*,
e.g., *Pease v. Lycoming Engines*, No. 4:10-CV-843, 2012 WL 162551,
at *5 (M.D. Pa. Jan. 19, 2012) (citing *Pa. Trust Co. v. Dorel
Juvenile Grp., Inc.*, No. 07-CV-4029, 2011 WL 374000472, at *12
(E.D. Pa. Aug. 25, 2011)).

claim for which she can provide the proper foundation.[7]

### d)  *Malfunction Theory*

With Defendants' Motion in Limine to Preclude Plaintiff's Reliance On and/or Jury Instructions Pertaining to the Malfunction Theory (Doc. 31) they assert Plaintiff should not be allowed to present a claim under the malfunction theory at trial because she has not addressed the issue of product misuse or reasonable secondary causes.  (Doc. 32 at 5-6.)  We conclude Defendants' motion is properly denied.

As set out in the Court's May 12, 2015, Memorandum (Doc. 24), the malfunction theory may be used to establish strict liability where direct evidence of defect is unavailable.[8]  (Doc. 24 at 13 n.1 (citing *Wilson v. Saint-Gobain Universal Abrasives, Inc.*, No. 213-CV-1326, 2015 WL 1499477, at *7, 12-13 (W.D. Pa. April 1, 2015)).)

> To establish a prima facie case of strict product liability, a plaintiff must prove "that the product was defective and that the product caused the Plaintiff's injury." *Wiggins v. Synthes (U.S.A.)*, 29 A.3d 9, 14 (Pa. Super. Ct. 2011).  Generally, a

---

[7]  Any request for reconsideration must be made in advance of trial, contain an appropriate offer of proof, and address compliance with discovery rules.  *See supra* n.1.

[8]  The specific issue of whether Plaintiff could proceed under the malfunction theory was not before the Court.  We only noted "the availability of the malfunction theory" (Doc. 24 at 13) after Plaintiff referenced it in her responsive brief (Doc. 18 at 5). *See infra* n.9.

> plaintiff relies on "direct evidence of an
> alleged defect in the product to establish
> the required element[.]" *Barnish v. KWI
> Bldg. Co.*, 602 Pa. 402, 980 A.2d 535, 539
> (Pa. 2009). But sometimes--say, whenever a
> product has been lost or destroyed--a
> plaintiff cannot introduce direct evidence of
> a defect. *Rogers v. Johnson & Johnson Prod.,
> Inc.*, 523 Pa. 176, 565 A.2d 751, 754 (Pa.
> 1989). In such cases, Pennsylvania law
> allows a plaintiff to resort to the
> malfunction theory, which does "nothing more"
> than allow a plaintiff to prove a defect
> through "circumstantial evidence of product
> malfunction" whenever the precise defect
> cannot be shown. *Id.* (citing *MacDougall v.
> Ford Motor Co.*, 214 Pa. Super. Ct. 1969)).
> In that way, it is akin to res ipsa loquitor:
> "both are rules of evidence rather than
> distinct causes of action" that "allow the
> factfinder to draw an inference that a defect
> existed in the product as originally sold."
> *1836 Callowhill St. v. Johnson Controls,
> Inc.*, 819 F. Supp. 460, 463 (E.D. Pa. 1993).
> To create such an inference, a plaintiff must
> introduce (1) "evidence of the occurrence of
> a malfunction," and (2) "evidence eliminating
> abnormal use or reasonable, secondary causes
> of the malfunction." *Rogers*, 565 A.2d at 754
> (citations omitted).

2015 WL 1499477, at *12.

Defendant notes that a plaintiff is not required to produce

expert testimony to establsih a prima facie case under the

malfunction theory, but such testimony is required if the subject

matter is beyond the comprehension of the average juror. (Doc. 32

at 3 (citing *Ellis v. Beemiller, Inc.*, 910 F. Supp. 2d 768, 774

(W.D. Pa. 2012)).) Defendant also cites *Ellis* for the following

propositions: 1) where a plaintiff is pursuing an exact theory of

what caused injury, there is no need to "level the playing field";

2) the plaintiff bears the burden of eliminating abnormal use or reasonable secondary causes; 3) the defendant's burden is only to identify other possible non-defect oriented explanations; 4) if an explanation consistent with the existence of a defect is as probable as an explanation inconsistent with the existence of a defect, the plaintiff cannot be held to have met his burden and a jury may not be permitted to speculate; and 5) the mere fact that an accident happened does not take the injured plaintiff to the jury. (Doc. 32 at 4 (citing *Ellis*, 910 F. Supp. 2d at 775, 778).)

We first note that both parties have incorporated previously filed material by reference(Doc. 32 at 1; Doc. 38 at 1; Doc.39 at 1.) The Local Rules of Court of the Middle District of Pennsylvania, specifically Local Rules 7.3 and 7.8(a), do not allow such incorporation. Nonetheless, we will proceed with an analysis of the merits of Defendants' motion.[9]

---

[9] We also note that Defendants have not previously asserted that the malfunction theory does not apply in this case. Neither Defendants' Motion to Preclude the Report and Testimony of J. Pablo Ross Pursuant to the Daubert Standard (Doc. 13) nor their supporting brief (Doc. 13-4) mentioned the malfunction theory. Although Plaintiff noted in her response to Defendants' motion that she could proceed on either a defect or malfunction theory (Doc. 18 at 5), Defendants did not file a reply brief and, therefore, did not contest this assertion. Neither Defendants' Motion for Summary Judgment (Doc. 16) nor their brief in support of the motion (Doc. 19) mention the malfunction theory. Their summary judgment motion was filed assuming the Court would grant their motion to preclude the testimony of Plaintiff's expert and Defendants argued that Plaintiff could not meet her burden of proof without expert testimony. (Doc. 19 at 3 & n.1.) They presented no other argument in support of their motion. (*See* Doc. 26 at 1.)

Turning to the elements of a malfunction theory case set out above, here Plaintiff has produced evidence of the occurrence of a malfunction. Her testimony, supported by photographs, provides evidence that Defendants' wax product did not function as intended--the container melted and wax erupted, causing injury to Plaintiff. (*See* Doc. 13-4 at 4-5; Doc. 13-5 at 28, 30.)

Plaintiff's testimony is also evidence eliminating abnormal use. At this stage of the proceedings, evidence eliminating abnormal use need not be conclusive and Plaintiff's testimony may be sufficient to satisfy her burden, particularly in that Defendants' experts' misuse theory is conclusory. *See*, *e.g.*, *Sochanski v. Sears, Roebuck and Co.*, 621 F.2d 67, 69-71 (3d Cir. 1980); *Dansak v. Cameron Coca-Cola Bottling Co.*, Inc., 703 A.2d 489, 497 (Pa. Super. Ct. 1997) (considering malfunction theory and concluding conflict between the plaintiff's and defendant's alternative theories must be resolved at trial, not on summary judgment). Here Plaintiff testified that she knew how to use the product and used it according to directions on the day of the incident at issue. (Doc. 13-4 at 2-4.) Although Defendants assert that "product misuse was the sole remaining cause of Plaintiff's mishap," they do not identify misuse which could result in the failure of the container and the eruption of wax described by Plaintiff. They state that their experts "opine that there was no defect in design, material or manufacture of the Sally Hansen

product and that product misuse was the sole remaining cause of Plaintiff's mishap." (Doc. 32 at 5 (citing Defendants' Expert Report at 5, 6).) This is an accurate summation of their experts' report. However, the report itself is notable because this assessment is the final sentence in Defendants' experts' report and is not accompanied by any explanation or supporting data--it does not identify a potential cause of Plaintiff's mishap. Rather, it is an assessment totally based on the experts' conclusion that the accident could not have happened as described by Plaintiff, i.e., their conclusion that "[a] violent eruption of wax and vapor in the manner described by Ms. Oulette [sic] is not scientifically possible." (Doc. 13-7 at 5.) This statement stands in contrast to Plaintiff's description of the incident and photographs supporting her testimony. (*See*, *e.g.*, Doc. 1-2 ¶¶ 21-22; Doc. 13-4 at 4-5; Doc. 13-5 at 28, 30.) Particularly noteworthy is Defendants' experts' conclusion that the container would fail before the wax product reached a dangerous point (Doc. 13-7 at 3), yet photographs show a failed container (Doc. 13-5 at 28, 30) and there is no dispute that Plaintiff was burned by the product.

This analysis also applies to Defendants' averment that they have "identified a non-defect orientated explanation." (Doc. 32 at 5.) While a defendant is not required to actually prove an alternative theory, a mere assertion is not sufficient to prevent a plaintiff from going forward. *See*, *e.g.*, *Sochanski*, 621 F.2d at

69-71; *Ellis*, 910 F. Supp. 2d at 781-82; *Dansak*, 703 A.2d at 497.
Defendants' experts did not explain what type of misuse would be
consistent with the evidence of product container failure and wax
splatter and we conclude this is not enough to prevent Plaintiff
from proceeding on the malfunction theory.

Similarly, we reject Defendants' proposition that, based on
*Ellis*, this is not a case where Plaintiff should be allowed to
proceed on the malfunction theory because "portions of the product
remained and Plaintiff has alleged a specific defect as per Mr.
Ross." (Doc. 32 at 4.) Defendants do not expand upon this
assertion. (*Id.*) Because Mr. Ross's theory is not inconsistent
with a product defect, *see*, *e.g.*, *Dansak*, 703 A.2d at 496
(circumstantial evidence supporting defect under malfunction theory
may include "expert testimony as to a variety of *possible*
causes")[10], and because *Ellis* is distinguishable in several aspects,

---

[10] In *Barnish v. KWI Building Co.*, 908 A.2d 535, 542 (Pa.
2009), the Supreme Court of Pennsylvania considered the
presentation of a plaintiff's *prima facie* malfunction theory case
and stated that

> if the plaintiff's theory of the case
> includes another cause for the malfunction
> such as improper maintenance or substantial
> wear and tear from regular use, a reasonable
> jury could not conclude the product was
> defective at the time of delivery when facts
> presented by the plaintiff suggest a cause
> for the malfunction unrelated to the alleged,
> unspecified defect.

980 A.2d at 542.

Defendants must do more to establish that they should prevail at this stage of the proceeding--it is their burden to show that Plaintiff cannot succeed on the malfunction theory as a matter of law and they have not done so.

In their reply brief, Defendants acknowledge that a defect may be established through non expert evidence but they assert that Plaintiff cannot proceed to a jury on a malfunction theory without an expert because the case involves matters which are "well outside the comprehension of the average juror." (Doc. 46 at 3.) Plaintiff posits that "jurors who normally have experience, here with microwaves, cosmetics, the importance of handing melting items, etc. is enough to allow for a reasonable jury to conclude the product was defective, especially when the Sally Hansen wax sizzles, explodes like a volcano, and the container disintegrates." (Doc. 39 at 3.) Citing *Oddi v. Ford Motor Co.*, 234 F.3d 136, 159-60 (3d Cir. 2000), for support, Defendants argue that "a reasonable

---

Quoting *Dansak*, *Barnish* noted that a malfunction theory plaintiff must produce circumstantial evidence to establish the elements of a Section 402A of the Restatement (Second) of Torts cause of action, which could include:

> (1) the malfunction of the product; (2) expert testimony as to a variety of *possible* causes; (3) the timing of the malfunction in relation to when the plaintiff first obtained the product; (4) similar accidents involving the same product; (5) elimination of other possible causes of the accident; and (6) proof tending to establish that the accident does not occur absent a manufacturing defect.

*Barnish*, 980 A.2d at 542-43 (quoting *Dansak*, 703 A.2d at 496).

juror cannot simply look at the wax or hear testimony from the Plaintiff concerning the incident and reach a reasonable determination without relying on mere speculation." (Doc. 46 at 3.)

In *Oddi* the court concluded expert testimony would be needed because a juror could not look at the front bumper and the flooring of the cab of the truck the plaintiff was driving and reasonably conclude that its design was defective, that testing would have disclosed the defect and that it could have been remedied. 234 F.3d at 159. We conclude this case is easily distinguishable from *Oddi* and Defendants have not established otherwise. Importantly, Defendants own experts support Plaintiff's position that many matters at issue are within the province of an average juror's experience. Defendants' experts discuss that most people are familiar with heating products in microwaves and potential problems with overheating, concluding that "[h]undreds of millions of people heat materials in microwave ovens every day with relatively few inflicting severe burns on themselves." (Doc. 13-7 at 4.) The experts also conclude the following: "The plastic jar and the wax heat similarly to a host of other materials commonly heated in microwave ovens. It is true that ovens can heat materials to temperatures sufficient to burn the skin, but such hazards are well known and need not be warned against." (*Id.* at 5.) Thus, Defendants' argument and the record before us do not show that Plaintiff's cannot proceed on a malfunction theory without the support of an expert.

Because Defendants have not shown that Plaintiff cannot satisfy the requirements of proceeding under the malfunction theory, this motion is properly denied.

### III. Conclusion

With these determinations, the Court recognizes that the rulings currently made on pending motions in limine may need to be reconsidered in the context of pretrial developments and circumstances at trial. Defendants' Motion in Limine to Preclude Plaintiff from Alleging Any Psychological Harm (Doc. 33) is denied without prejudice. Defendants' Motion in Limine to Preclude Evidence and/or Limit Evidence of Medical Expense and Wage Loss (Doc. 27) is granted to the extent Plaintiff is precluded from presenting evidence related to wage loss and tuition reimbursement and denied to the extent Plaintiff presents competent evidence of appropriately reimbursed medical expenses. Defendants' Motion in Limine to Preclude Evidence of Other Lawsuits or Claims Involving Defendants' Heatable Wax Products (Doc. 29) is granted. Defendants' Motion in Limine to Preclude Plaintiff's Reliance On and/or Jury Instructions Pertaining to the Malfunction Theory (Doc. 31) is denied. An appropriate Order is filed simultaneously with this Memorandum.

S/Richard P. Conaboy
RICHARD P. CONABOY
United States District Judge

DATED: August 25, 2015