IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| KELSEY OUELETTE | : | |
| | : | |
| Plaintiff | : | |
| v. | : | 3:14-CV-00712 |
| | : | (JUDGE MARIANI) |
| COTY US, LLC | : | |
| | : | |
| Defendant | : | |

## MEMORANDUM OPINION

### I. INTRODUCTION

Presently before the Court is Plaintiff's Motion in Limine (Doc. 61) requesting that defense counsel "be precluded from arguing, admitting, explaining or offering the conclusion[s] given by Dr. Thomas Eager [*sic*] in [certain portions of] his trial deposition."

Plaintiff's motion takes issue with three portions of the videotaped trial deposition of Dr. Thomas Eagar, Defendant's liability expert: (1) Dr. Eagar's response to a question by Defense counsel asking whether exposure to wax at 127°F causes the type of burns Plaintiff claims occurred; (2) Dr. Eagar's opinion that the wax was heated for at least two minutes and that the wax was not defective or unreasonably dangerous; and (3) Dr. Eagar's responses to Defense counsel's questions regarding moisture vaporizing. (Doc. 61, at ¶ 3). Plaintiff asserts that none of the aforementioned testimony by Dr. Eagar has "data, information or support contained in [Dr. Eagar's] written report of 2/6/15, but rather where

[*sic*] testified to without notice or advance written reports as the Rule and this Court's Order[1] required." (*Id.* at 2).

For the reasons that follow, the Court will deny Plaintiff's motion in its entirety.

## II. ANALYSIS

Here, Plaintiff's overarching argument appears to be that Defendant violated Federal Rule of Civil Procedure 26 and the Court's pre-trial order because Defendant did not produce certain information "in Dr. Eager's [*sic*] written report within the Court ordered deadline or at any time before Dr. Eager's [*sic*] deposition" and the Dr. Eagar's trial deposition therefore "came as a complete surprise and was . . . extremely prejudicial." (Doc. 62, at 1).

In determining whether to exclude some or all of a witness's testimony due to the failure of a party to comply with pre-trial requirements, a Court should assess the following factors:

    1. the prejudice or surprise in fact to the opposing party;
    2. the ability of that party to cure the prejudice;
    3. the extent to which the orderly and efficient trial of the case would be disrupted; and
    4. bad faith in failing to comply with the court's order.

*Williams v. Rene*, 72 F.3d 1096, 1103 (3d Cir. 1995) (citing *DeMarines v. KLM Royal Dutch Airlines*, 580 F.2d 1193, 1201-1201 (3d Cir. 1978)). *See also, Bowersfield v. Suzuki Motor*

---

[1] Plaintiff does not specify what "Rule" she is referring to or the document number of the "Court Order" to which she is referring.

*Corp.*, 151 F.Supp.2d 625, 631 (E.D. Pa. 2001). "In addition, the significance of the practical importance of the excluded evidence must be taken into consideration." *Id.*

With respect to expert testimony,

> "Testimony of an expert on matters within the expert's expertise but outside of the expert's report is not only permissible at trial, but the exclusion of such testimony may be reversible error.... An expert may testify beyond the scope of his report absent surprise or bad faith." *Fritz v. Consolidated Rail Corp.*, 1992 WL 96285, *3 (E.D.Pa. Apr. 23, 1992) (Hutton, J.) (Citing *DeMarines v. KLM Royal Dutch Airlines*, 580 F.2d 1193 (3d Cir.1978)). Courts within this district have also noted that there is no local custom, practice or rule which would limit an expert's testimony to the strict confines of his report. *See id.* at *3 (citing *Kelly v. GAF Corp.*, 115 F.R.D. 257 (E.D.Pa.1987)(Ditter, J.))

*Bowersfield v. Suzuki Motor Corp.*, 151 F.Supp.2d 625, 631 (E.D. Pa. 2001).

The Third Circuit has reversed the exclusion of expert testimony by District Courts where there is only a "slight deviation from pre-trial notice requirements, and admitting the witness [is] likely to cause only slight prejudice" to an opposing party who was already aware of the "basic substance of the witness' testimony." *In re Paoli R.R. Yard PCB Litigation*, 35 F.3d 717, 792 (3d Cir. 1994) (citing *DeMarines v. KLM Royal Dutch Airlines*, 580 F.2d 1193, 1202 (3d Cir. 1978)).

### A. Plaintiff's Objection to Dr. Eagar's Trial Testimony – 36:7-40:7

Plaintiff first argues that Dr. Eagar's testimony at transcript page 36, line 7, through page 40, line 7 is not admissible. The testimony in this portion of the transcript stems from the following question by Defense counsel: "In your opinion, Doctor, does exposure to wax at 127 degrees Fahrenheit cause the type of burns that Ms. Ouelette is claiming?". (Tr.

3

Dep. of Dr. Eagar, Doc. 61-2, at 36). The basis of Plaintiff's very brief argument does not appear to be the temperature of the wax at issue, but rather Dr. Eagar's opinion that wax could not have caused the burns at issue at 127°F and therefore that Dr. Eagar's report "does not contain any data or information as the basis or reason for information or data considered or used for" Dr. Eagar's opinion.[2]

Despite Plaintiff's assertions, Dr. Eagar's expert report details a variety of temperatures, ranging from 140°F - 350°F, at which a person will suffer a burn. Of particular relevance here, Dr. Eagar's report opines that "[t]he skin can tolerate 140°F for approximately 5 seconds without a burn . . . . While air or water temperatures of 140°F may be uncomfortable, such temperatures do not create rapid burning of the skin."[3] (Doc. 61-1, at 2)(citing Payne-James, J., Busuttil, A., & Smoch, W. (2003). *Forensic Medicine: Clinical and Pathological Aspects*. London: Greenwich Medical Media Ltd.). As a result, the argument that Dr. Eagar's opinion that Plaintiff's burns could not have occurred if the wax was heated to a temperature of 127°F, thirteen degrees lower than a temperature which Dr. Eagar stated in his report would not rapidly burn the skin, is untenable. Furthermore, Dr. Eagar's report explained the measures he utilized in reaching the equilibrium temperature of 127°F. (Doc. 61-1, at 2). Thus, while Dr. Eagar's report may not have verbatim opined that

---

[2] The Court notes that Plaintiff is not arguing with respect to any of the portions of Dr. Eagar's trial deposition transcript that any of Dr. Eagar's testimony is outside of his area of expertise.

[3] To the extent that Plaintiff perceives some lack of application of the quoted statement to his argument on the basis that the statement addresses the temperature at which air and water cause burning of the skin, we also note Dr. Eagar's statement that "wax and esters used in the Sally Hansen product do not boil until they reach temperatures of approximately 700°F (371°C)." (Doc. 61-1, ¶ 4).

exposure to wax at 127 degrees Fahrenheit could not have caused the type of burns that Ms. Ouelette claims occurred, this opinion can reasonably be said to be well-within the scope of his report stating that "[w]hile air or water temperatures of 140°F may be uncomfortable, such temperatures do not create rapid burning of the skin," and cannot be said to have prejudiced or surprised Plaintiff's counsel, nor have been the result of bad faith.

The Plaintiff's motion in limine to preclude Dr. Eagar's testimony at transcript page 36, line 7, through page 40, line 7 will therefore be denied.

### B. Plaintiff's Objection to Dr. Eagar's Trial Testimony – 44:20-48:7

Plaintiff next requests that page 44, line 20, through page 48, line 7, of Dr. Eagar's trial deposition be precluded. (Doc. 61, ¶ 3). During this portion of the trial deposition, Dr. Eagar opined that the wax which burned Plaintiff was "heated for at least two minutes, and probably maybe a little more" and that there was no defect in the design, material, or manufacture of the wax product and thus Plaintiff's injuries were the result of "abuse of service." (Tr. Dep. of Dr. Eagar, Doc. 61-2, at 44-46). The remainder of the transcript portion at issue consists of Dr. Eagar's opinion regarding the report of Plaintiff's expert, J. Pablo Ross. (*See id.* at 46-48).[4]

Plaintiff argues that Dr. Eagar's report ""does not contain any data or information as the basis or reason for information or data considered or used for" his opinion during his trial

---

[4] This portion of Dr. Eagar's deposition addressing J. Pablo Ross' findings merely once again reiterates Dr. Eagar's opinion that a wax temperature of 127°F, and therefore 123°F which was the temperature that Mr. Ross was able to reach, would not cause rapid skin burns. The Court has previously addressed this issue and found it to be admissible.

deposition that the wax was heated for at least two minutes. (Doc. 62, at 2). However, any objection to this passing statement by Dr. Eagar has been waived. During Dr. Eagar's trial deposition, the following exchange took place:

> ATTORNEY HEFFRON: Doctor, within a reasonable degree of scientific certainty, do you have an opinion as to whether Ms. Ouelette's incident could have occurred as she has alleged?
>
> DR. EAGAR: Yes, I do.
>
> ATTORNEY HEFFRON: And what is that?
>
> DR. EAGAR: Well, it depends on what you mean "her incident." She got burned; it was hot wax, but it was not wax that was only heated for 40 seconds.
> In my opinion, it was wax that was heated for at least two minutes, and probably maybe even a little more.
>
> ATTORNEY HEFFRON: Doctor, also within a reasonable degree of scientific certainty, do you have an opinion as to whether the Sally Hansen lavender spa wax was defective or unreasonably dangerous?
>
> DR. EAGAR: Yes, I do.
>
> ATTORNEY RYDZEWSKI: Objection.
> . . .
> (Off the video record)
>
> ATTORNEY RYDZEWSKI: I'm going to object, once again, that that statement, per se, is not conveyed in the report. Go ahead. You can go forward.

(Tr. Dep. of Dr. Eagar, at 44-45). Plaintiff's objection was raised in response to Defense counsel's question regarding whether the wax was "defective or unreasonably dangerous." There was no objection following Dr. Eagar's opinion that the wax was heated for at least

6

two minutes. Moreover, Dr. Eagar's opinion is fairly encompassed in the following excerpt from his report:

> At the other extreme, we heated a full jar of the wax at full power in a 1200-Watt microwave oven for 2.5 minutes (150 seconds). The jar was removed from the oven at 30-second intervals and stirred to aid temperature equilibration. The temperature of the wax material reached 270°F (132°C), but the wax did not boil, bubble, or pop. The jar remained fully intact with no indication of melting or heat damage. The jar was hot to the touch but was safely lifted from the oven by hand with latex gloves. In other words, after severe overheating of the container, the wax reached a high temperature as expected, but the jar remained intact and the wax material remained stably in the liquid phase.

(Doc. 61-1, ¶ 4). According to Dr. Eagar, "[w]ax and the esters used in the Sally Hansen product do not boil until they reach temperatures of approximately 700°F (371°C)."

With respect to Plaintiff's argument that the Court should preclude Dr. Eagar's trial testimony that there was no defect in the design, material, or manufacture of the wax product, Plaintiff incoherently states that "as part of this opinion and over objection that the product was not defective or was not unreasonably dangerous, (no longer a legal finding to be made in a 402 A.2d case in Pennsylvania). See: <u>Tincher vs Omega Flex, Inc.</u>, 104 A3d 328 2014 Pa. Lexis 3031." (Doc. 62, at 2). This statement comprises the majority of Plaintiff's argument on the subject and leaves the Court to guess as to the basis of Plaintiff's objection in this motion in limine.

Plaintiff subsequently argues that this Court's prior opinion in this case, written by Senior District Court Judge Richard Conaboy, also mandates the exclusion of "the opinion

7

that there was no defect design, material or malfunction". (Doc. 62, at 2). According to Plaintiff,

> this Court previously found in reviewing [sic] the same report that Dr. Eager [sic] did not identify what misuse, if any, could result in failure of the container and eruption of the wax described by the Plaintiff which therefore, negates his conclusion that product misuse, and [sic] was the resulting cause of the mishap.

(Id. (citing Doc. 49, at 21-22)).

Dr. Eagar's report states that he engaged in several experiments to determine what happened with respect to the wax's "explosion". Dr. Eagar heated a jar of Lavender Spa Body Wax for 30 seconds, using a microwave with the same wattage as that of Ms. Ouelette, and then heated the same wax jar for 40 seconds on the high power setting. The results from this experiment demonstrated that "heating for 30 seconds on full power does not create a burn hazard, heating for 40 seconds on full power does not create a burn hazard, and that the plastic jar does not overheat before the wax is warm enough for use." (Doc. 61-1, ¶ 3). Dr. Eagar then heated a jar of the wax for 150 seconds, removing it at 30 second intervals to stir. As a result, the Doctor noted that "after severe overheating of the container, the wax reached a high temperature as expected, but the jar remained intact and the wax material remained stably in the liquid phase." (Id. at ¶ 4). Having been unsuccessful in attempting to recreate the incident in the way Ms. Ouelette claims it occurred, and after explaining certain scientific propositions regarding the boiling points of wax and esters, Dr. Eagar concluded that "it is scientifically impossible for the polypropylene

8

container to contain wax that is at or near the boiling point. The plaintiff's description of the incident violates basic and established scientific laws and principles." (*Id.*).

In addition to Dr. Eagar's experiments, the following except from his report provides a sufficient factual basis for the ultimate opinion in his report that "[t]here was no defect in design, material or manufacture of the Sally Hansen product" (Doc. 61-1, at 5):

> A vapor explosion such as that described by the plaintiff and defended by Mr. Ross requires rapid heat transfer to the vaporizing material and a material capable of containing a significant pressure. Neither of these conditions could have been met by the jar of wax while sitting outside the microwave. First, the wax material has a low thermal diffusivity, and therefore, equilibrates slowly. Devoid of an external energy source (i.e., sitting outside the microwave), heat transfer to and from the wax cannot occur rapidly. Second, the Coty product is a viscous liquid even at room temperature, and as such, it is not capable of containing a significant internal pressure. The capacity to contain pressure decreases as the temperature of the wax increases. Without rapid heat transfer and without the ability to contain pressure, any trapped vapor would expand slowly and escape benignly from the top of the jar. A violent "eruption" of wax and vapor in the manner described by Ms. Oulette [*sic*] is not scientifically possible.

(*Id.* at ¶ 6).

Although Plaintiff asserts that Judge Conaboy found that Dr. Eagar "does not identify a potential cause of Plaintiff's mishap", she ignores Judge Conaboy's subsequent statement that despite this omission, "a defendant is not required to actually prove an alternative theory, [but] a mere assertion is not sufficient to prevent a plaintiff from going forward" (Doc. 49, at 22). Further, this Court also agrees with, and reminds Plaintiff, of Judge Conaboy's statement in a prior opinion that "[t]his is a case where Mr. Ross' theory should be tested by the adversary process. Competing expert reports and cross-examination will allow the

9

jurors to weigh the merits of Mr. Ross's theory." (Doc. 24, at 14). In other words, it is for the jury to decide the merits and persuasiveness of each expert's opinions and findings. Plaintiff is now impermissibly attempting to usurp the jury's function by asking the Court to make these factual determinations.

As a result, Plaintiff's motion to preclude page 44, line 20, through page 48, line 7, of Dr. Eagar's trial deposition will be denied.

### C. Plaintiff's Objection to Dr. Eagar's Trial Testimony – 48:20-51:7

Finally, Plaintiff moves to have Dr. Eagar's trial deposition transcript from page 48, line 20, to page 51, line 7, precluded. Plaintiff states that Dr. Eagar's "conclusion that after 40 seconds of heating, he did not get moisture vapor in the wax and that Mr. Ross could not replicate the wax bubbling in his test" is not in Dr. Eagar's report. (Doc. 62, at 2).

To the extent that Plaintiff contends that Dr. Eagar's conclusions that "his experiment after 40 seconds did not get moisture vaporizing, there's no moisture in the wax and Mr. Ross could no replicate wax bubbling during his heat testing" (Doc. 61, at 2), Dr. Eagar's report contains an analysis of the "Engineering Report" of Plaintiff's expert, J. Pablo Ross, wherein Dr. Eagar sets forth his opinion that Mr. Ross' experimentation methodology was erroneous and that he failed to perform a "critical step in the scientific method by overlooking or ignoring key data related to the investigation." (Doc. 61-1, at ¶ 6). What follows is Dr. Eagar's explanation of Mr. Ross' allegedly erroneous analysis as well as Dr. Eagar's assertion that a key factual premise for Mr. Ross' conclusion was lacking, i.e. that

10

"there is no credible source of the supposed moisture that vaporized, expanded, and burst from the wax jar." (*Id.*).

Dr. Eagar's opinions regarding Mr. Ross' methodology and conclusions are integral to the defendant's case. Each portion of the transcript to which Plaintiff objects is encompassed within Dr. Eagar's report, and, if not directly, at minimum Plaintiff could not reasonably be said to not have notice or to have been unaware of the "basic substance of the witness' testimony." Thus, despite Plaintiff's assertions to the contrary, any prejudice to Plaintiff is difficult to discern and, according every benefit of the doubt to Plaintiff, insignificant at best, so that Plaintiff cannot fairly argue that any of Dr. Eagar's testimony was a "complete surprise".

Accordingly, the Court will deny Plaintiff's motion to preclude Dr. Eagar's trial deposition transcript from page 48, line 20, to page 51, line 7.

### III. CONCLUSION

For the foregoing reasons, Plaintiff's Motion in Limine (Doc. 61) will be denied in its entirety.[5] A separate Order follows.

/Robert D. Mariani
United States District Judge

---

[5] The Court emphasizes the limited scope of this Opinion. We expressly do not pass on the merits and ultimate persuasiveness of either expert's findings and opinions, which are for the jury to assess.

11